## UNITED STATES DISTRICT COURT
### FOR THE
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |  |
|---|---|---|
| LAURA CLIBER, | ) | Case No.: |
|  | ) |  |
|  | ) |  |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| PETE HEGSETH, | ) |  |
| SECRETARY, | ) |  |
| U.S. DEPARTMENT OF DEFENSE | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) | Date Action Filed: April 30, 2026 |

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Laura Cliber ("Plaintiff"), by and through his undersigned counsel, and brings this action for damages against the Defendant, Pete Hegseth, as Secretary of the U.S. Department of Defense ("DOD" or "Agency"), and alleges as follows:

### SUMMARY OF THE ACTION

1.  This is an action for sex discrimination, sexual harassment, hostile work environment, retaliation, constructive discharge, and unlawful agency action

1
COMPLAINT

arising from Plaintiff's federal civilian employment as a dual-status Title 32 military technician employed by the West Virginia National Guard.

2. Plaintiff was subjected to years of sexual harassment and misconduct by Major James Domenico, including sexual assault, repeated sexualized comments, unwanted touching, abuse of supervisory authority, and retaliation.

3. After Plaintiff formally reported the misconduct in 2017, Defendants failed to protect her, left the accused supervisor in authority over Plaintiff's workplace and witnesses, isolated Plaintiff from coworkers, removed her from the office, weaponized Plaintiff's protected leave usage against her, and created intolerable working conditions that forced Plaintiff's resignation.

4. Defendants then conducted flawed and biased investigations, ignored corroborating witness testimony and documentary evidence, and constructed a false narrative portraying Plaintiff as dishonest, dramatic, and as having "weaponized" the complaint process.

5. Defendants repeatedly reopened proceedings, reset hearings, required repeated discovery and mediation, caused years of unnecessary attorney expense and procedural exhaustion, and ultimately dismissed Plaintiff's claims in January 2026.

6.  Plaintiff exhausted administrative remedies through years of active administrative litigation culminating in the January 29, 2026 dismissal via the administrative reals.

7.  In 2021, after the National Guard Bureau issued a new Notice of Proposed Resolution ("NPR") and granted renewed hearing rights, Plaintiff timely requested a hearing upon actual receipt of the NPR.

8.  Plaintiff thereafter participated in status conferences, scheduling conferences, discovery obligations, mediation directives, and repeated hearing preparation over several years, including preparation for hearing on at least three separate occasions.

9.  Multiple hearings were scheduled, canceled, postponed, and reset, including hearings scheduled for 2021, 2024 and again for October 2025.

10. The January 29, 2026 dismissal with prejudice constitutes the operative final agency action for purposes of judicial review, exhaustion, and the filing of this action.

11. Defendants may not benefit from years of delay, procedural manipulation, and agency-created confusion used to prolong proceedings and later assert abandonment as a basis for dismissal.

## JURY TRIAL DEMAND

12. Under Fed. R. Civ. P. 38 (b), Plaintiff hereby demand trial by jury on all issues

triable to a jury.

## JURISDICTION

13.    This action arises under Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1341 (federal question) and 1343 (civil rights).

## PARTIES AND VENUE

14. Plaintiff Laura M. Cliber ("Plaintiff") was, at all relevant times, employed as a dual-status federal technician, GS-12, under Title 32 with the West Virginia National Guard.

15. Plaintiff served in both civilian technician status and military status and worked within the Comptroller/Finance Office during the events giving rise to this action.

16. Plaintiff's claims arise from her civilian federal employment and the discriminatory, retaliatory, and procedurally improper actions taken against her in connection with that employment.

17. Defendant West Virginia National Guard served as Plaintiff's employing activity, supervisory command structure, and workplace during the events giving rise to Plaintiff's claims.

18. At all relevant times, Defendants acted through their officers, supervisors, investigators, hearing officers, legal advisors, and decision-makers, each acting within the scope of their authority and employment.

19. Defendants are responsible for the acts, omissions, retaliation, investigative failures, procedural misconduct, and unlawful employment practices alleged herein.

20. Defendant, Pete Hegseth, is sued in his official capacity as the current Head of the U.S. Department of Defenses, an agency of the United States, and Plaintiff's employer at the time these events occurred.

21. Venue is proper in the United States District Court for the District of Columbia, and Defendant is subject to the personal jurisdiction of the United States District Court for the District of Columbia because Defendant maintains facilities and business operations in this District. 28 U.S.C. § 1391(b) and (e); 42 U.S.C. § 2000e-5(f).

22. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3), as Plaintiff is a resident of this district and substantial effects of Defendants' final agency action were suffered in this District, the administrative proceedings remained active while Plaintiff resided in this District, and the Defendant maintains operations within this District.

COMPLAINT

## FACTUAL ALLEGATIONS

35. Plaintiff was hired in December 2006 as a federal civilian employee in a GS-12 dual-status Title 32 technician position with the West Virginia National Guard and worked within the Comptroller/Finance Office.

36. Although Plaintiff also served in military status as required by her technician position, Plaintiff challenges unlawful conduct affecting her civilian employment, workplace conditions, and the administrative handling of this matter.

37. Major James Domenico ("Domenico") exercised authority over Plaintiff in both civilian and military capacities. His conduct directly affected Plaintiff's civilian duties, work environment, supervisory chain, evaluations, and continued federal civilian employment.

38. When Domenico became Comptroller in approximately 2015, he became Plaintiff's civilian supervisor within the Finance Office while both parties also held dual-status military roles, placing Plaintiff under the direct authority of the same individual who had previously sexually assaulted her.

39. In approximately 2004, while Plaintiff was assigned to maintenance training and Domenico held supervisory authority within the military workplace, he engaged in repeated unwelcome sexual conduct toward Plaintiff.

6
COMPLAINT

40. Domenico made inappropriate sexual comments, asked invasive personal questions, played with Plaintiff's hair, touched Plaintiff's face and neck, and repeatedly crossed physical boundaries in a sexualized and unwelcome manner.

41. During an on-aircraft training task aboard a C-130, Domenico grabbed Plaintiff's buttocks without consent and stated words to the effect of, "God, I have wanted to do that for so long."

42. Plaintiff disclosed the incident to multiple individuals over the years prior to her 2017 formal complaint.

43. Later investigations confirmed that Plaintiff had disclosed the 2004 assault long before the 2017 report, directly undermining later claims that Plaintiff fabricated the allegation for retaliatory purposes.

44. When Plaintiff later reported the assault by produced training records bearing Domenico's signature on Plaintiff's required on-aircraft task certifications during that same period, directly contradicting his denial that he was not present.

45. Defendants failed to meaningfully address this contradiction.

46. After returning to supervisory authority over Plaintiff's civilian workplace in approximately 2015, Domenico resumed increasingly inappropriate and personal comments directed toward Plaintiff, including repeated comments about Plaintiff's appearance, pregnancy, "pregnancy glow," long hair, breastfeeding,

and statements that he could not wait until Plaintiff was finished breastfeeding so he could "get a beer" in her.

47. These comments were unwelcome, sexualized, and not directed toward other female employees in the same manner.

48. Plaintiff remained silent out of fear of retaliation based on the prior assault and Domenico's authority over her civilian employment, which allowed the conduct to escalate.

49. In April 2017, during mandatory Sexual Assault Prevention and Response ("SAPR") training at Camp Dawson, Domenico leaned toward Plaintiff and asked what she would do if he "slapped" or "grabbed" her ass.

50. Plaintiff contemporaneously documented the incident through text messages to her husband and later provided leadership conference records and supporting documentation to investigators.

51. Defendants nevertheless minimized the incident, credited Domenico's denial, and treated the event as mutual joking rather than sexual harassment and re-traumatization.

52. Following the April 2017 SAPR incident, Plaintiff experienced severe migraines, vomiting, anxiety, emotional distress, and significant deterioration in her physical and mental health.

53. The April 2017 incident was the triggering event that forced Plaintiff to formally report both the prior assault and the ongoing harassment.

54. In June 2017, Plaintiff formally reported Major Domenico's sexual harassment, prior sexual assault, retaliation, and the hostile work environment within the Finance Office.

55. Plaintiff reported both the 2004 assault and the continuing sexualized conduct, intimidation, and abuse of supervisory authority occurring under Domenico's command.

56. Rather than separating Plaintiff from the accused supervisor, Defendants allowed Domenico to remain in authority over the office and over many witnesses relevant to the investigation.

57. Plaintiff's coworkers were told not to speak with her, Plaintiff was stripped of duties, excluded from normal office functions, and increasingly treated as though she—not the reporting employee—was the problem.

58. Defendants improperly used Plaintiff's pregnancy-related leave, FMLA leave, approved sick leave, military leave, and command-directed leave to create a false absenteeism narrative designed to undermine Plaintiff's credibility.

59. Witnesses who lacked personal knowledge of Plaintiff's leave usage repeated these claims based on office gossip rather than firsthand knowledge, demonstrating witness contamination while Domenico remained in authority.

60. Plaintiff informed senior leadership, including the Wing Commander, of the prior assault, the April 2017 SAPR incident and resulting hostile environment. Leadership failed to take meaningful protective action and sent Plaintiff back into the same work environment under Domenico's authority.

61. During this period, Plaintiff's medical condition worsened significantly, including migraines, anxiety, depression, vomiting, and severe workplace-related stress.

62. Defendants offered no meaningful protection, failed to remove the accused supervisor, and allowed the retaliation and humiliation to continue.

63. A reasonable employee in Plaintiff's position would have found continued employment intolerable.

64. In September 2017, Plaintiff resigned from her federal civilian technician position because Defendants made continued civilian employment objectively intolerable.

65. Plaintiff's resignation was not voluntary and constituted constructive discharge resulting in the loss of Plaintiff's federal civilian career, salary, retirement benefits, and long-term professional opportunities.

66. Following Plaintiff's protected disclosure, Defendants initiated multiple Equal Opportunity ("EO"), Commander Directed Investigation ("CDI"), Office of

Complex Investigations ("OCI"), and National Guard Bureau ("NGB") review processes concerning Plaintiff's allegations.

67. Rather than conducting a neutral and thorough investigation, Defendants permitted fragmented, delayed, and biased investigative handling that focused on attacking Plaintiff's credibility rather than determining whether harassment and retaliation had occurred.

68. Investigators further used leading questions and preloaded assumptions, including directly asking witnesses whether Plaintiff was the person who was "constantly not getting her work done and not there," reflecting a predetermined credibility attack rather than neutral fact-finding.

69. Plaintiff provided documentary evidence contradicting Domenico's denials, including training records, leadership conference documentation, contemporaneous text messages, and records undermining claims of formal discipline.

70. Defendants nevertheless minimized Plaintiff's corroborating evidence, credited Domenico's denials, and repeatedly reframed Plaintiff's complaint as an attendance issue, personality conflict, or misuse of the complaint process rather than addressing the underlying sexual harassment and retaliation.

71. Defendants' own legal review went so far as to characterize Plaintiff as having "weaponized the complaint process" and recommended adverse action against Plaintiff rather than meaningful accountability for the accused supervisor.

72. At the same time, OCI findings acknowledged evidence substantiating inappropriate touching, and later findings confirmed corroborating witness statements regarding Plaintiff's prior disclosures of the 2004 assault.

73. Defendants further acknowledged that the evidence did not fully exonerate Domenic.

74. NGB later acknowledged that the CDI investigation was "detailed and extensive, but flawed," further confirming that the administrative process was procedurally defective and unreliable.

75. Plaintiff diligently pursued administrative relief for years, including informal EO proceedings, formal investigations, rebuttal submissions, reopened investigations, OCI review, a Final Agency Decision ("FAD"), an OFO appeal, and repeated hearing preparation.

76. In 2021, NGB issued a new Notice of Proposed Resolution ("NPR"), acknowledged investigative flaws, and granted renewed hearing rights.

77. Plaintiff timely requested a hearing upon actual receipt of the NPR.

78. When the Agency moved to dismiss the request as untimely, Hearing Officer Bernard Doyle denied that motion and found good cause existed because the

parties had established a prior practice of communicating with Plaintiff through her personal email rather than solely through her government account.

79. Plaintiff thereafter participated in status conferences, scheduling conferences, discovery obligations, mediation directives, and repeated preparation for hearing on at least three separate occasions.

80. In October 2025, another scheduled hearing was suspended due to the government shutdown and circumstances outside Plaintiff's control.

81. Despite years of active litigation, completed mediation participation, repeated hearing preparation, and prior denial of dismissal, Defendants dismissed Plaintiff's case on January 29, 2026. The Notice of Dismissal was received on January 30, 2026.

82. No merits hearing was ever held.

83. Defendants repeatedly prolonged, restarted, and exhausted the administrative process until the process itself became the punishment, using procedural attrition rather than fair adjudication of Plaintiff's discrimination claims.

**Count No. 1**
**Violations of the Title VII of the Civil Rights Act of 1964,**
**as amended, 42 U.S.C. §§ 2000e, et seq.**
**(Unlawful Discrimination Based on Sex)**

84. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs (1-83) of this Complaint

with the same force and vigor as if set out here in full.

85. Plaintiff is a member of a protected class (female).

86. Plaintiff was qualified for her position.

87. Plaintiff suffered adverse employment actions and During Plaintiff's employment, Defendant engaged in unlawful discriminatory employment practices by discriminating against her with respect to the terms and conditions of her employment based on her sex.

88. The unlawful employment practices include, without limitation, disparate treatment, denying her training, placing her on administrative leave, demoting her pay, improperly without due process to a lower pay grade, reassigning her from a full-time regular employee to a part-time employee, and subjecting her to a hostile work environment because of Plaintiff's sex.

89. Other similarly situated employees who were not of sex or race did not face such disparate treatment or unwarranted personnel actions.

90. Plaintiff's sex was a motivating factor of Defendant in engaging in the unlawful employment practices.

91. The effect of these practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of her sex.

92. These unlawful employment practices were intentional.

93. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

94. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

95. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

**Count No. 2**
**Retaliation in Violation of Title VII**
**42 U.S.C. §§ 2000e, et seq.**
**(Retaliation for Engaging in Protected Activity)**

96. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs (1-83) of this Complaint with the same force and vigor as if set out here in full.

97. Title VII prohibits agencies from discriminating against any individual because such individual has opposed any act or practice made unlawful by

15
COMPLAINT

this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

98. During Plaintiff's employment she had a good faith belief that Defendant was engaging in discriminatory conduct in violation of Title VII.

99. Plaintiff engaged in protected opposition to Defendant's unlawful employment practices and engaged in lawfully protected processes.

100. Defendant's knowledge of Plaintiff's extensive protected activity informed and reinforced management's retaliatory animus, which culminated in the materially adverse actions challenged herein.

101. After and in retaliation to Plaintiff's participation in protected activity against Defendant and in opposition to what she reasonably believed to be Defendant's unlawful discrimination against her, Defendant retaliated against Plaintiff by subjecting her to disparate treatment, denying her training, placing her on administrative leave, demoting her pay, improperly without due process to a lower pay grade, reassigning her from a full-time regular employee to a part-time employee, and subjecting her to a hostile work environment, which has impacted her professional reputation and standing in the Agency.

102. The effect of these practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of engagement in EEO protected activity/opposing unlawful discrimination.

103. These unlawful employment practices were intentional.

104. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

105. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

106. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

**Count No. 3**
**Hostile Work Environment in Violation of Title VII**
**42 U.S.C. §§ 2000e, et seq.**

**(Hostile Work Environment (sexual) for Engaging in Protected Activity and Based on Claims for Discrimination Herein – Sex)**

107. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs (1-83) of this Complaint with the same force and vigor as if set out here in full.

108. This conduct occurred repeatedly over the course of years, interfered with Plaintiff's ability to perform her duties, undermined her authority and credibility in the workplace, and created an objectively hostile and abusive working environment.

109. Title VII prohibits agencies from causing a hostile work environment for their employees.

110. Sexual harrasseement is also prohibited under the same legal entity.

111. During Plaintiff's employment she had a good faith belief that Defendant was engaging in discriminatory conduct in violation of Title VII.

112. Plaintiff engaged in protected opposition to Defendant's unlawful employment practices and engaged in lawfully protected processes.

113. Defendant's knowledge of Plaintiff's extensive prior protected EEO activity informed and reinforced management's retaliatory animus, which culminated in the materially adverse actions challenged herein.

114. Defendant has continued to retaliate and discriminate against Plaintiff by protecting a series of such acts of discrimination and/or retaliation against her as stated in this Complaint.

115. The effect of these discriminatory and retaliatory acts deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of her sex and engagement in protected activity.

116. These unlawful employment acts and practices were intentional.

117. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

118. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

119. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

## PRAYER FOR
## RELIEF

WHEREFORE, Ms. Cliber respectfully requests that the Court enter judgment in her favor and award him the following relief:

a)      Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon.

b)      Compensatory damages in an amount to be determined at trial to compensate Ms. Cliber for the physical and emotional pain, embarrassment, humiliation, mental anguish, medical costs, future medical costs, inconvenience, career loss, loss of professional reputation and career opportunities, and loss of quality of life caused by Defendant's unlawful actions;

c)      Any and all accrued Thrift Savings Plan benefits;

d)      Award Plaintiff her full costs and reasonable attorney's fees; and

e)      Award such further relief as may be deemed just and appropriate.


Dated: April 30, 2026

Respectfully submitted,

By: /s/ Andi Kasimati

Andi Kasimati
SOLOMON, MAHARAJ &
KASIMATI, P.A.

20
COMPLAINT

5005 W. Laurel Street, Suite 216
Tampa, FL 33607
Telephone: (813)-497-7650
Facsimile:  (813) 434-2386
Email: andi@smkfirm.com
FL BAR No. 1007984
*Counsel for Plaintiff*

COMPLAINT